21728.   DUNN et al. v. CAYLOR.

ARGUED JULY 10, 1962—DECIDED SEPTEMBER 6, 1962.

*J. Paxson Amis, James Maddox,* for plaintiffs in error.
*McCamy, Minor & Vining,* contra.

ALMAND, Justice. Peggy Caylor in an action against Mrs. Pauline Dunn to recover damages for injuries to her person also sought to set aside a deed from Mrs. Dunn to her two minor daughters, also defendants. The general demurrer and certain special demurrers of the defendants to the petition were overruled. Paragraph 19 of the answer of Mrs. Dunn was stricken on motion of the plaintiff. On the trial a verdict awarding damages to the plaintiff against Mrs. Dunn and a finding that the deed should be set aside was returned and a judgment was entered thereon. Subsequently the defendants' motions for a judgment notwithstanding the verdict and for a new trial were overruled. Error is assigned on all of these orders.

■ *The rulings on the demurrers to the petition.*

(a) *The general demurrer.* The petitioner alleged that the injuries to her were sustained on the night of April 11, 1958, at a time when she was a guest passenger in an automobile which the petition alleged was owned, purchased and maintained by Mrs. Pauline Dunn for the "use, pleasure and convenience of herself and members of her household" and at a time when said automobile was being used and operated by Gene Dunn, a minor son of the said Mrs. Pauline Dunn, with the "full knowledge, consent and permission of" the said Mrs. Dunn. The said minor son of the plaintiff in error was a member of the United States Army at the time of the accident, was home on leave from a tour of duty on the West coast and had traveled on his trip home all of the day of April 11, 1958, and all of the night of April 10-11, 1958, without sleeping. At the time of the accident the said Gene Dunn was driving the automobile with the defendant in error and two other friends as his guests toward Tennga, Murray County, Georgia, at about midnight, and was returning from a picture show which the four had seen in Cleveland, Tennessee. The general demurrer clearly raises the question as to whether Mrs. Dunn would be liable under the family purpose doctrine for the acts of her son who was home on leave from the military service. It appears from the pleadings and the record that all of the necessary requisites to the application of the family purpose doctrine are here present and that the only argument which the plaintiff in error offers to defeat the application of the doc-

trine is the fact that the son was in the military service, and it is thus suggested that such service has so emancipated the minor child from the control of his parent that the family purpose doctrine would not be applicable. It is our opinion that the service of the son in the military service would not defeat the application of the family purpose doctrine in the present case. Although we find no case in this jurisdiction which decides this exact issue, we do find sufficient authority to support our decision in this case. In the case of *Hubert v. Harpe,* 181 Ga. 168, 172 (182 SE 167), this court in holding that it did not defeat the application of the family purpose doctrine merely because the family member, an adult son, was a non-dependent and self-sustaining, stated that the controlling test is not whether the child is adult or minor or self-supporting or dependent but rather whether the child "was using the car for a purpose for which the parent provided it, with the permission of the parent, either express or implied." This court there stated that a decision relative to the application of the family purpose doctrine is based squarely upon the relation of master and servant or principal and agent and in any case the principal inquiry is whether, under the facts, such relation exists between the parent and the child. The court stated (p. 171) that "A father is under no legal obligation to furnish an automobile for the comfort and pleasure of his child, whether minor or adult; and if he does so, it is a voluntary act on his part. In every such case the question is whether the father has expressly or impliedly made the furnishing of an automobile for such purpose a part of his business, so that one operating the vehicle for that purpose with his consent, express or implied, may be considered as his agent or servant. A child, whether minor or adult, may occupy the position of a servant or agent of his parent, and for his [or her] acts as such the parent may be liable under the general principles governing the relation of master and servant or of principal and agent." See also *Golden v. Medford,* 189 Ga. 614 (7 SE2d 236).

Every case concerning the application of the family purpose doctrine must stand upon its own facts as to what the parent has voluntarily assumed as a part of the business to which he will

devote himself and to which he will have his vehicle applied. The extent to which an automobile may be used for the comfort and pleasure of the family is a question to be settled by the parent and it is also a matter for the parent's determination as to whether a son home from the military service would be included among those whose comfort and pleasure would be promoted by the use of the vehicle. A parent is not relieved from liability merely because a child is an adult or self-sustaining.

It was not error to overrule the ground of the demurrer of the plaintiff in error that the petition did not set forth a cause of action against the defendant parent.

(b) *The special demurrers.* These grounds challenge the sufficiency of the allegations to charge the driver with gross negligence. The petition alleges that the car was being driven at a speed of forty-five to fifty miles per hour along a public highway and was approaching a concrete bridge in said highway; that at a point approximately three hundred yards from said bridge the highway curves to the driver's left; that the operator of the automobile, after leaving said curve and while approaching the bridge referred to, fell asleep or dozed, temporarily losing consciousness, and drove said automobile head-on into a concrete abutment at the end of said bridge with terrific force and impact, said impact resulting in the injuries for which the defendant in error brought this action. The petition alleges that the surrounding facts and circumstances, tiredness, drowsiness, excessive speed, failure to observe the road and not having control of the automobile were sufficient to authorize a finding of gross negligence and that said gross negligence was the sole and proximate cause of the collision.

In our opinion it was not error to overrule the ground of the demurrer that the acts of negligence complained of did not constitute gross negligence.

■ *The order striking paragraph 19 of the answer of the defendant, Mrs. Pauline Dunn.* The plaintiff in her petition alleged that a few weeks after the accident Mrs. Dunn conveyed a tract of real estate, without any valid consideration, to her two minor daughters; that such conveyance was made solely for the purpose of defrauding, hindering and delaying the plaintiff,

a creditor, and was therefore a void conveyance and should be set aside.  Mrs. Dunn in paragraph 19 of her answer averred that: "The allegations of paragraph 19 of the petition as alleged are denied.  Further answering, this defendant shows that on or about April 28, 1958, she did execute and deliver to her said minor daughters, Janice Fay Dunn, age 12, and Paulette Virginia Dunn, age 11, the property described in said paragraph; that said property was purchased with part of the proceeds paid in settlement of a claim on account of the death of their father and which, under the law, said children would be entitled to one-half the proceeds thereof; that said deed was made for the purpose of putting the record title in said children, to whom said property belonged, and for no other purpose."  The court on oral motion struck this paragraph and during the trial refused to admit any evidence relative to the matters contained in this paragraph.

It is our opinion that it was error for the trial judge to sustain the motion to strike the aforesaid paragraph of the answer of Mrs. Dunn.  Under the provisions of *Code* § 105-1304 ("In the event of a recovery by the widow she shall hold the amount recovered subject to the law of descents, as if it were personal property descending to the widow and children from the deceased."), the two daughters of Mrs. Dunn would be entitled to a distributive share of any recovery by judgment or compromise of any claim which arose out of the death of their father.  Inasmuch as their father was survived by his wife, two daughters and one son, the two daughters would be entitled to one-half of any such settlement, though by statute (*Code* § 105-1302) the right of action for the homicide of the husband and father would be in Mrs. Dunn.  Whatever money she received by judgment or compromise settlement without suit, the portion to which the children would be entitled under the law of descent and distribution would be held by her as a trustee.  When she used the children's portion to purchase the tract of real estate in question, though she took title in her own name, an implied trust arose that she held the same for the benefit and use of the children as to their portion.  *Code* § 108-106.1.  See also in this regard: *McCollum v. McCollum*, 202 Ga. 406 (1) (43 SE2d 663);

*Griffith v. Griffith,* 128 Ga. 371 (57 SE 698); *Vickers v. Vickers,* 210 Ga. 488 (80 SE2d 817); *Carmichael v. C. & S. Bank,* 162 Ga. 735 (1) (134 SE 771); *Rich v. Rich,* 175 Ga. 258 (1) (165 SE 109); *Wells v. Wells,* 216 Ga. 384 (116 SE2d 586); *First Nat. Bank of Cornelia v. Kelly,* 190 Ga. 603 (10 SE2d 66); In Re Smith's Estate, 191 Tenn. 69 (231 SW2d 569); Joel v. Peter Dale—Garage, 206 Minn. 580 (289 NW 524); 52 ALR2d 1004; and 72 ALR2d 278.

The case of *Dodd & Co. v. Bond,* 88 Ga. 355 (14 SE 581), is directly in point with the issue involved here and is controlling. In that case a father died intestate leaving an estate consisting of personalty of the value of $4,500. There were four children and a widow surviving. The widow, without administration, took possession of the property and out of the proceeds invested the sum of $2,500 in real estate, taking the title in her own name. A creditor thereafter gave credit to the widow on the faith of the property to which she held legal title. She subsequently conveyed the property to a trustee to hold for her children and after said conveyance her creditor obtained a judgment against her and attempted to subject the property to sale under his judgment. The court there held that, "When the widow bought the land in question with the money of these children, taking the title in her own name, the beneficial interest in the property at once vested in them, and she held as their trustee, though as one who was so wrongfully. . . When she gave up the property to the rightful owners by conveying the title out of herself into a trustee for their benefit, no lien had attached to it. No judgment against her in favor of these creditors had been rendered; and their extension of credit to her because the title stood in her name and because of her representations that she was the owner, could not give them any right in the property which would prevail against the transfer by which she afterwards placed the property where it belonged. Such an extension of credit to a wrongful holder of property cannot prevent the rightful owners who have not participated or acquiesced in the transaction and who have done nothing to mislead the creditor as to their rights, from getting the legal title free from the equity of the creditor. These beneficiaries were infants, and

against them no such conduct or acquiescence could be charged."

The petition having charged the mother with ulterior motives in conveying the property to the two children, she was entitled to allege facts showing the consideration of the deed and the bona fides of the transaction. It was error to strike this defense. An inspection of the record discloses that this error was not cured during the trial, but on the contrary it shows that when the defendant, Mrs. Dunn, sought to introduce evidence as to the source of the money used to purchase the property being from the settlement of the claim for the homicide of her husband, such evidence was ruled out on objection by the plaintiff. The court having erred in striking an affirmative defense to a material issue raised by the plaintiff's petition, all further proceedings were nugatory and this erroneous ruling requires the grant of a new trial. See *Steadham v. Cobb*, 186 Ga. 30 (196 SE 730).

*Judgment reversed. All the Justices concur.*