### 74220. MORRIS v. DeLONG et al.
(358 SE2d 285)

SOGNIER, Judge.

Charles Morris brought suit against Michael DeLong, Ploof Truck Lines, Inc. (PTL) and Transport Indemnity Company, PTL's insurer, seeking damages for injuries incurred in an accident between Morris' automobile and PTL's truck, driven by DeLong. PTL counterclaimed for property damages to its truck. The jury returned a verdict against Morris on his claim and in favor of Morris on PTL's counterclaim. The trial court denied Morris' motion for a new trial and this appeal followed.

Appellant's car was struck from behind by PTL's tractor trailer truck, driven by DeLong, on Interstate Highway 75 in Turner County, Georgia, on the night of October 14, 1983. Appellant and a companion had been driving over 24 hours from Oklahoma straight through to

Florida with only a few rest breaks at the time of the accident. Appellant testified he was travelling 50 to 55 miles per hour in the right hand (outside) lane and spotted PTL's truck when it was 10 to 15 feet behind him travelling an estimated 90 miles per hour. DeLong testified he was travelling 55 miles per hour when he observed appellant's car moving into the emergency lane (though no brake lights or turn signals were used). DeLong checked his side mirror but was unable to move into the inside passing lane because a car was in the process of passing his truck. When he looked forward seconds later, appellant's car had veered back into the right hand lane and was travelling "very slow." DeLong stood on his brakes but was unable to stop his flatbed truck, weighing 76,000 pounds with a load of sacked cement, from colliding with the rear of appellant's vehicle. The occupants of the car in the passing lane, Norman and Terri Wehner, testified DeLong's truck was travelling 55 miles per hour as they passed it and that appellant's car was "practically stopped," "almost at a dead stop," travelling at a speed of four to five miles per hour. The State Patrol trooper who investigated the accident determined that at the time of the accident, DeLong was travelling at approximately 55 miles per hour and that appellant was "almost stopped in the roadway," estimating an approximate speed of "about five miles an hour."

1. Appellant contends the trial court erred by failing to charge that professional truck drivers owe a higher duty of care to the motoring public because of their superior driving skill. We need not address this issue since the record reveals there was no written request to charge on this issue and no objection was made to the charge as given on the duty of care owed by the parties. See *Cochran v. Quinter, Inc.*, 156 Ga. App. 109, 110 (2) (274 SE2d 113) (1980).

2. Appellant complains the trial court erred by giving those charges cited as error in enumerations 2, 3, 4, 6, and 8. It is axiomatic that a party cannot complain of the giving of an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection. OCGA § 5-5-24 (a). The record reveals that appellant failed to object to any of the charges cited in his enumerations. " ' "Failure to except before verdict generally results in a waiver of any defects in the charge [cits.], the exception under [OCGA § 5-5-24 (c)] applying only when there has been a substantial error which was blatantly apparent and prejudicial, and which resulted in a gross miscarriage of justice." ' [Cit.]" *Hunter v. Batton*, 160 Ga. App. 849 (1) (288 SE2d 244) (1982). We find no blatant or prejudicial error in the charges of which appellant complains.

3. Appellant argues that the trial court erred by charging the jury that if appellant's negligence was equal to or greater than appellees' negligence then appellant could not recover, arguing there was

no evidence that appellant was negligent on which to base this charge. We need not address appellees' argument that appellant failed to object properly to this charge, since we find the record is replete with evidence of appellant's negligence in that it appears appellant veered in and out of the emergency lane without signalling and slowed to a near stop on a limited-access interstate highway with a 40 miles per hour minimum speed limit. See generally *Smith v. Lott*, 246 Ga. 366 (271 SE2d 463) (1980).

4. Appellant contends the trial court erred by charging the provisions of OCGA § 40-6-123, regarding the use of signals required on turning, changing lanes, slowing, or stopping. Appellant argues this charge was inapplicable because DeLong was aware of appellant's change of lanes while 2,000 feet from appellant. This assertion is rebutted by DeLong's testimony that although he observed appellant's car moving into the emergency lane (without signals), he was aware only seconds before the crash that appellant's car had veered back into the right hand lane. Since appellant failed to indicate the movement of his vehicle by any appropriate signal, the trial court was authorized to charge OCGA § 40-6-123 (a-c). Although OCGA § 40-6-123 (d) as charged may have been inapplicable under the facts in evidence, it is not usually cause for a new trial that an entire Code section is given. *Chapman v. Piggly Wiggly Southern*, 178 Ga. App. 835 (344 SE2d 755) (1986).

5. Appellant next complains that the trial court erred by charging that "no person shall stop, stand, or park a vehicle on any controlled-access highway." OCGA § 40-6-203 (a) (1) (I). The Wehners testified that appellant's car was "sitting there in the right-hand lane" and that it was "almost at a dead stop." Appellant argues, however, that this charge is applicable only where the vehicle is at a "dead stop." We agree with appellees that "stop" necessarily includes the act of stopping and that the evidence presented an inference from which the jury could have found that appellant was in the process of stopping or had come to a rolling stop at the time of the collision. We find support for this holding in OCGA § 40-6-204 which exempts from the purview of OCGA § 40-6-203 any driver of a vehicle so disabled that "it is impossible to avoid stopping" the vehicle. See also *Blake v. Continental Southeastern Lines*, 161 Ga. App. 869 (289 SE2d 551) (1982) and 168 Ga. App. 718 (309 SE2d 829) (1983), in which this court found a question of fact existed whether a bus, having entered the roadbed of a limited-access highway and travelling at 30 miles per hour, had violated OCGA § 40-6-203 (a) (1) (I).

6. Appellant, in his final enumeration, contends the trial court erred by charging the jury on the doctrine of emergency because the evidence indicated either that the emergency was created by DeLong's own negligence or that DeLong had ample opportunity to ex-

tract himself from the sudden emergency, avoiding appellant's act. Under the evidence adduced at trial, as discussed above, we find no merit in this enumeration. *Barlow v. Veber*, 169 Ga. App. 65, 66 (1) (311 SE2d 501) (1983).

*Judgment affirmed. McMurray, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur fully in all divisions of the opinion except Division 5. I agree that there was evidence of such action on the part of Morris that the jury could find it came within the meaning of OCGA § 40-6-203 (a) (1) (I). This is not to say that a driver does not have an affirmative duty to "stop" rather than just to "slow down," at a stop sign. OCGA § 40-6-72 (b). Compare OCGA § 40-6-72 (c). The negative duty in OCGA § 40-6-203 (a) (1) is to *not* stop, because of the obstruction to oncoming traffic, and this duty embraces so closely approximating a full stop that it amounts to the same hazard. In respect to the scope of the statute prohibiting stopping, here under review, the most analogous case is *Garrett v. Brannen*, 164 Ga. App. 10 (2) (296 SE2d 205) (1982), overruled in another regard, *Chadwick v. Miller*, 169 Ga. App. 338, 344 (312 SE2d 835) (1983). A charge on what is now OCGA § 40-6-203 (a) (1) was found not to be error; there was evidence that one of the vehicles "slowed down or stopped . . . applied [the] brakes and stopped . . . suddenly."

In *Blake v. Continental Southeastern Lines*, 161 Ga. App. 869 (289 SE2d 551) (1982), and 168 Ga. App. 718 (309 SE2d 829) (1983), the stopping prohibited by OCGA § 40-6-203 related to the bus actually coming to a stop on the paved shoulder, where it remained for a period of time, not to the act of returning to the highway and reaching an acceleration speed of 30 mph. The question with regard to the unauthorized stop on the shoulder (i.e., not for an emergency) was whether it was a proximate cause of the collision which occurred after the bus had reentered the highway. It was not disputed that the bus had been fully stopped.

Thus that case does not stand for the proposition that "stop" includes starting up and achieving movement again or, as in this case, slowing down to a stop.

DECIDED MAY 28, 1987.

*G. Gerald Kunes*, for appellant.
*Joseph B. Gray, Jr.*, for appellees.